## RETIREMENT SYSTEMS

### APPLICABILITY OF EARNINGS LIMITATION TO RETIREE EMPLOYED BY PARTICIPATING MUNICIPALITY

August 2, 1995

*The Honorable David R. Brinkley*
*House of Delegates*

You have requested our opinion whether a contractual employee of the Town of Brunswick is subject to the earnings limitation applicable to those receiving a State retirement allowance. Your inquiry was prompted by the situation of Mr. Paul Cook, a contractual employee of the town whose salary is paid exclusively from user fees, not tax money. If Mr. Cook is subject to the earnings limitation, he has indicated that he will no longer be able to continue his employment, much to the dismay of town officials.

As much as we might wish to offer an interpretation of the law that would avoid this dilemma, we cannot. In our opinion, there is but one answer under current law: Mr. Cook is subject to the earnings limitation.[1] If the results under current law are unacceptable, the General Assembly should consider changing it.


## I

### Earnings Limitation For Retirees

Under §31-102 of the State Personnel and Pensions ("SPP") Article, Maryland Code, various governmental units are eligible to participate in the employees' systems.[2] Among these governmental

---

[1] This conclusion affirms that of Assistant Attorney General Harriet B. Granet in a letter of advice dated May 22, 1995, to Delegate Paul Stull.

[2] Membership in the Retirement Systems closed on December 31, 1979. SPP §22-202(b). Those who were not members of the Retirement

(continued...)

units are municipal corporations.  The Town of Brunswick is a participating employer.

With membership in the system comes adherence to the system's ground rules.  One such limitation addresses "double-dipping": simultaneous receipt of retirement benefits and compensation for public employment.

The current provision is found in SPP §§22-406 and 23-407.[3] This provision begins by permitting a retiree to accept government employment:  "Subject to subsection (b) of this section, a retiree who is receiving a service retirement allowance may accept employment with a participating employer on a permanent, temporary, or contractual basis, without any reduction in retirement allowance...."  SPP §22-406(a).  However, the "subsection (b)" to which this grant of permission is subject imposes a pension offset linked to the compensation from the participating employer.  The subsection provides as follows:

> (1)  This subsection does not apply to:
>
>> (i)  a retiree who has been retired for more than 10 years; or
>>
>> (ii)  a retiree whose average final compensation was less than $10,000 and who is reemployed on a temporary or contractual basis.
>
> (2)  The Board of Trustees shall reduce a retiree's retirement allowance by the amount that the sum of the retiree's annual basic allowance, at the time of retirement, and the retiree's annual compensation exceeds the

---

[2] (...continued)
System as of that date are eligible for membership in the Pension Systems only.

[3] These provisions are identical.  SPP §22-406 applies to the Retirement Systems; SPP §23-407, to the Pension Systems.  To simplify citations, this opinion refers to SPP §22-406 only, the section applicable to Mr. Cook.

average final compensation used to compute
the basic allowance.

SPP §22-406 says nothing about the source of the "retiree's annual compensation." Subsection (b)(1) contains two circumstances under which the earnings limitation does not apply; neither of these addresses a retiree whose compensation from a participating employer comes from a source other than tax dollars.

The legislative history of this provision demonstrates that this omission reflects a considered policy judgment by the General Assembly. Before the recodification of the laws governing pensions, the earnings limitation had an explicit link to employee compensation "from State funds":

> Notwithstanding any other provision of law to the contrary, a retired member who is receiving a service retirement allowance may accept ... employment or enter into a contract for personal services with the State, local school system, library, community college or a participating municipal corporation in which all or part of the compensation therefor comes from State funds, ... provided the retirement allowance receivable by him, computed without optional modification, plus the annual remuneration for the position, shall not exceed in amount the average final compensation upon which such retirement allowance was based, except that there shall be no limitation on retirement allowance for any such member who has been retired for a period of more than 10 years. The annual earnings of a service pensioner shall be determined by the difference between the retirement allowance at the time of his retirement, and his average final compensation.

Former Article 73B, §86(9)(a). *See* Chapter 712, Laws of Maryland 1967.

In 1988, the former counsel to the Retirement and Pension Systems advised that Mr. Cook's retirement allowance "will *not* be subject to any offset if he accepts a contract for personal services

with a local government that participates in Maryland State Retirement and Pension Systems." Letter from Assistant Attorney General Carol S. Sugar to Delegate George H. Littrell, Jr. (October 26, 1988). Ms. Sugar correctly applied the law in effect at the time, for her analysis emphasized the then-critical fact that Mr. Cook was not paid with State funds: "While paragraph (9)(a) does place a limitation on the amount of compensation a teacher retiree may earn without offset under a personal service contract with a participating municipal corporation, it is applicable only if all [or] part of that compensation comes from State funds." Since Mr. Cook's contract was funded without any State funds, the restriction in the former law was not applicable to him.

The 1994 recodification of the pension laws reworded the earnings limitation provision so as to eliminate the link to State-funded compensation. This change was highlighted for the General Assembly in a Revisor's Note:

> [I]n subsection (a) of this section, the former phrase "in which all or part of the compensation for the employment or services comes from State funds" is deleted for accuracy and consistency. The State Personnel and Pensions Article Review Committee notes, for the consideration of the General Assembly, that whether a retiree's service retirement allowance is affected is determined by whether the employer participates in the several systems, not by whether the particular position is funded with State funds. In many instances, it is impractical to determine whether a particular position is paid out of State funds. The deletion of this phrase is consistent with the practice of the Board of Trustees.

When the General Assembly enacted this section as proposed by the Review Committee, it accepted the policy argument that the source of funds ought to be irrelevant. Whether this policy decision was a wise one or not, we cannot say. We simply point out the irrefutable fact that the General Assembly made that decision.

As a result, the 1988 advice about Mr. Cook's situation was superseded by the change in the law. On October 1, 1994, the effective date of Chapter 6, it became irrelevant that Mr. Cook's compensation comes from sources other than State funds (or indeed, sources other than tax dollars of any kind). Chapter 6 contained no "grandfather" provision safeguarding current retirees against application of the amended earnings limitation to their future stream of retirement benefits.

No subsequent legislation has affected the result required under Chapter 6. In Chapter 703 of the Laws of Maryland 1994, the General Assembly added the exception found in SPP §22-406(b)(1)(ii), for any "retiree whose average final compensation was less than $10,000 and who is reemployed on a temporary or contractual basis." Chapter 703 did not affect Chapter 6's deletion of the "source of funds" language. In Chapter 363 of the Laws of Maryland 1995, the General Assembly added another exception to SPP §22-406, for any "retiree who is serving in an elected position as an official of a participating governmental unit or as a constitutional officer for a county that is a participating governmental unit." Once again, the General Assembly chose not to further amend SPP §22-406 by restoring the former language relating to the source of the employee's compensation. Finally, Chapter 371 of the Laws of Maryland 1995 amended a number of provisions in the pension laws "for the purpose of clarifying ambiguities and inconsistencies ...." SPP §22-406 was not amended by this bill.

## II

### Conclusion

In our opinion, there really is no doubt about the answer to your question under current law: Mr. Cook, and other similar situated retirees, are subject to the benefit reduction in SPP §22-406, even if they are paid from user fees rather than tax dollars. If the General Assembly believes that this outcome reflects unwise policy,

it need only amend SPP §22-406 to reinsert the "source of funds" language that it repealed in 1994.[4]


J. Joseph Curran, Jr.
*Attorney General*

Jack Schwartz
*Chief Counsel*
  *Opinions & Advice*

---

[4] One way to achieve this result would be by adding a new subparagraph to SPP §22-406(b)(1), so that the subsection would not apply to "a retiree whose employment compensation does not derive, in whole or in part, from State funds."